UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GARY DEAN GROWDEN, | Case Nos.  06-CR-0387 (PJS) |
| | 08-CV-1814 (PJS) |
| Petitioner, | |
| | ORDER DENYING 28 U.S.C. § 2255 |
| v. | MOTION TO VACATE, SET ASIDE, OR |
| | CORRECT SENTENCE |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

Gary Dean Growden, pro se.

Joseph T. Dixon, III, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, for respondent.

Petitioner Gary Dean Growden pleaded guilty to two counts of wire fraud in violation of 18 U.S.C. § 1343 and was sentenced to concurrent sentences of 27 months on each count and three years of supervised release.  Growden was also ordered to pay $385,000 in restitution.

This matter is now before the Court on Growden's motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.  For the reasons stated below, Growden's motion is denied.  As the motion and the files and records of this case conclusively show that Growden is not entitled to relief, no evidentiary hearing is necessary.  *See Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995).

Section 2255 states, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Growden has filed a § 2255 motion, a memorandum in support of his motion, and a letter replying to the government's response to his motion. In his papers, Growden essentially raises four claims of ineffective assistance of counsel.[1] If true, Growden's allegations would establish that his sentence was imposed in violation of the Sixth Amendment's guarantee of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that Sixth Amendment guarantees right not only to assistance of counsel, but to effective assistance of counsel).

To prevail on a claim of ineffective assistance of counsel, Growden must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Id.* at 687, 694. In reviewing ineffective-assistance claims, a court must be careful to avoid second-guessing counsel's strategic decisions: "Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. Moreover, the reasonableness of counsel's conduct must be considered in light of the defendant's own statements and actions. *Id.* at 691. With these principles in mind, the Court considers each of Growden's allegations of ineffective assistance.

*A. Failure to Explain Offense Levels and Appellate Process*

Growden alleges, without elaboration, that his counsel failed to "explain offense levels" — presumably a reference to the Sentencing Guidelines — and that his counsel did not explain the appellate process. With respect to the former claim, Growden's allegation is belied by the

---

[1]Growden also asks the Court to lower his sentence in light of Amendment 706 to the Sentencing Guidelines. Amendment 706 reduced the crack/powder cocaine sentencing ratio in U.S.S.G. § 2D1.1(c) and thus has nothing to do with Growden's case.

-2-

record.  Growden's plea agreement explains the parties' Guidelines calculations, including the base offense level and the adjustment based on the amount of the loss caused by Growden's fraudulent schemes.  During his change-of-plea hearing, Growden affirmed that he had read the plea agreement, that he had discussed it with his counsel, and that he understood its terms.  To make certain that there was no misunderstanding, the Court asked counsel for the government to review the terms of the plea agreement with Growden on the record.  He did so.  Indeed, after summarizing each provision of the plea agreement — including the provisions regarding the base offense level and the adjustment based on amount of loss — counsel for the government asked Growden whether he understood the provision.  Growden said that he did.  After counsel for the government finished the summary, the Court asked Growden yet again if he understood the plea agreement.  Growden again said that he did.  Growden's claim that no one explained the offense levels is thus patently meritless.

As for Growden's contention that his counsel did not explain the appellate process, Growden cannot prove that he was prejudiced by any such failure.  Before asking Growden for his plea, the Court explained the appellate process to Growden — and specifically explained that he could not appeal his sentence unless he received a sentence of imprisonment that exceeded 27 months.  At his sentencing, the Court explained that, although Growden had waived some appellate rights in his plea agreement, Growden could nevertheless file an appeal; that he had ten days after the entry of judgment in which to file an appeal; and that he could proceed *in forma pauperis* if he lacked the funds to pay for an appeal.  Any failure on counsel's part to explain this process was thus harmless.

### B. *Failure to Argue Cooperation*

Growden next argues that his counsel failed to bring the fact of Growden's cooperation with the government to the Court's attention at sentencing. Growden is mistaken. At the sentencing hearing, Growden's counsel contended that Growden had spent a significant amount of time working with the FBI in its investigation of Growden's crimes and those of Growden's associates. As Growden's counsel did, in fact, raise the issue of cooperation, Growden's argument that his counsel was ineffective in this regard is without merit.

### C. *Failure to Argue that Growden Paid $100,000 in Restitution*

In his motion, Growden contends that his counsel was ineffective because he failed to argue that Growden had already paid $100,000 in restitution. Presumably Growden means to say that his counsel should have made this argument at sentencing,[2] but his papers are extremely vague. Growden provides no evidence that he *made* any such payment before sentencing; he does not even state when or to whom the alleged payment was made. Indeed, in his memorandum and letter, it appears that Growden may be referring to restitution payments that he made *after* his sentencing and pursuant to the Court's restitution order — payments that his attorney obviously could not have raised *at* sentencing. Assuming that Growden is contending that he made $100,000 in restitution payments before sentencing, however, this claim is inherently incredible.

---

[2]To the extent that Growden is claiming that the restitution order is too high, his claim must be rejected as beyond the scope of § 2255. *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) (challenges to restitution orders are not cognizable in § 2255 proceedings). Growden's § 2255 claim relating to the alleged $100,000 payment is thus limited to any prejudice Growden may have suffered from the failure of his attorney to present that payment as a mitigating factor in determining the custodial portion of his sentence.

To begin with, Growden was represented by an Assistant Federal Defender because he had no money.  The Presentence Investigation ("PSI") reported, based on information that Growden himself supplied, that Growden's net worth was minus $101,091, and his net monthly cash flow was minus $133.  According to the PSI, the adjusted gross income reported by Growden to the Internal Revenue Service was $9,402 in 2005, $8,016 in 2004, and $10,248 in 2003.  How, exactly, Growden could have come up with $100,000 to pay restitution when he did not have enough money to hire an attorney and when his income over the past three years had been about $10,000 per year is a mystery.

At the sentencing hearing, the government pointed out that Growden had already paid about $2,000 in restitution in the form of a loan to one of his victims and asked that the amount of restitution be reduced accordingly.  His counsel agreed that this reduction was appropriate.  Later, Growden was given a chance to address the Court, and he said nothing at all about a previous $100,000 restitution payment.  It is simply not believable that, after hearing the government and his attorney inform the Court that he had already paid $2,000 in restitution, Growden would not inform the Court that he had in fact already paid $100,000 in restitution.  And given the fact that Growden offers no details about or proof of this alleged payment, the Court finds Growden's assertion that he made such a payment before his sentencing (assuming that he is making such an assertion) to be patently incredible.  The Court therefore denies this claim.  *See Engelen*, 68 F.3d at 240-41 (petition may be dismissed without a hearing if the allegations are inherently incredible).

*D. Failure to Present Evidence of Victims' Willing Participation*

Growden pleaded guilty to defrauding numerous people out of hundreds of thousands of dollars by promising to invest their money and then keeping the money for himself. Apparently suffering from "pleader's remorse," Growden now wants to argue his innocence — at least his innocence of everything except defrauding one victim out of $10,000. Specifically, Growden submits numerous contractual and other documents purporting to show that his victims were actually willing participants in most of the transactions at issue and that Growden did not intend to defraud them. Growden also contends that the FBI destroyed evidence, including evidence of contracts and e-mails that allegedly informed one of the victims that a $335,000 investment would be forfeited. According to Growden, discounting all of the transactions in which, as Growden sees it, there was no "victim," the amount of the loss due to his fraudulent conduct is only $10,000, which would reduce his offense level dramatically.

Of course, proof that Growden's victims gave him money willingly does not negate Growden's guilt. The government's theory of the case was that Growden promised to invest his victims' money, and evidence that the victims gave money to Growden willingly is entirely consistent with the government's theory.[3] Setting that aside, Growden has an even bigger problem: his current argument is directly contradicted by the numerous admissions that he made in his plea agreement and under oath at his change-of-plea hearing.

---

[3] The Court also notes that Growden's allegations of evidence tampering by the FBI are highly implausible. The Court need not rely on that as a basis to deny his motion, however. It is sufficient to hold, as the Court does, that in light of Growden's admissions at the change-of-plea hearing and in his plea agreement, his counsel's failure to investigate and present evidence disputing those admissions was reasonable.

In his plea agreement and at his change-of-plea hearing, Growden said that he was guilty of the crime charged and stipulated that "the loss was between $200,000 and $400,000." Docket No. 24 Ex. A ¶ 7(b). He also agreed that the proper amount of restitution was $391,000, less any amount paid before sentencing. Docket No. 24 Ex. A ¶ 10. Counsel for the government described these stipulations on the record at Growden's change-of-plea hearing, as well as the factual recitations in the plea agreement, and Growden agreed that they were factually accurate. Counsel for the government also questioned Growden in detail at the hearing, and Growden admitted, under oath, that he had defrauded his victims of money in the total amount of $391,000. In light of these admissions, counsel's failure to present any evidence disputing the amount or existence of the fraud at sentencing was entirely reasonable. Growden's § 2255 motion is therefore denied.

### E. Certificate of Appealability

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Under this standard, the Court declines to grant a COA. Far from being debatable, Growden's allegations are either legally baseless or directly contradicted by the record in this case.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Petitioner's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence [Docket No. 21 in No. 06-CR-0387] is DENIED.

2. No certificate of appealability will issue.

Dated: October 15, 2008                              s/Patrick J. Schiltz
                                                     Patrick J. Schiltz
                                                     United States District Judge